**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                               :
WARREN LEVERETT,               :
                               :   Civil Action No. 09-1903 (MLC)
            Plaintiff,         :
                               :
      v.                       :        O P I N I O N
                               :
PHILIP CARCHMAN, et al.,       :
                               :
            Defendants.        :
_____ :
```

**APPEARANCES:**

> WARREN LEVERETT, Plaintiff pro se, #66829 SBI #944029
> East Jersey State Prison, A.C.S.U.  D-#118, Lock Bag R
> Rahway, New Jersey 07065

**COOPER,** District Judge

Plaintiff, Warren Leverett, a convicted state prisoner confined at East Jersey State Prison ("EJSP") in Rahway, New Jersey, when he submitted this Complaint, seeks to bring this action in forma pauperis. Plaintiff provides an affidavit of indigency and his inmate account statement. Based on Plaintiff's affidavit of indigency, and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant the application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a), and order the Clerk of the Court to file the Complaint.

The Court — as Leverett is a prisoner and proceeding as an indigent — must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary

relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should be dismissed.

## I.   BACKGROUND

Leverett brings this action, pursuant to 42 U.S.C. § 1983, against the following defendants: the Honorable Philip Carchman, P.J.A.D.; Charles Waldron, Assistant Prosecutor for Mercer County; Frank Deitz, Chairman of Youth Act Sentences N.J. State Parole Board ("NJSPB"); the Honorable Richard J. S. Barlow, Jr., J.S.C.; Alvin McGowen, Assistant Prosecutor for Mercer County; Karl Guthrie, appointed counsel; Paul T. Koenig, Prosecutor; the Honorable Paul T. Koenig, J.S.C.; R. Carlini, Regional Supervising Parole Officer; the Honorable David Schroth, J.S.C.; Anthony Goyden, Parole Officer; Thomas Ridge, Parole Officer; Eve Washington, Parole Officer; Steven Goldberg, Associate Member of NJSPB; Loraine Kulick, Associate Member of NJSPB; Dominic Porovecchio, Associate Member of NJSPB; Richard Prihoda, Hamilton Township Police Officer, Badge #338; the Honorable Mary Belamouwitz, J.S.C.; the Honorable Charles Delehey, J.S.C.; the Honorable Thomas Kelly, J.S.C.; the Honorable Andrew Smithson, J.S.C.; the Honorable William Mathesius, J.S.C.; Jude Del Preore, Deputy Clerk, Superior Court of New Jersey, Mercer County; Daniel Giaquinto, Mercer County Prosecutor; Skylar Wissman, Mercer County Prosecutor; Jennifer Downing, Assistant Prosecutor for

Mercer County; George W. Hayman, Commissioner of the New Jersey
Department of Corrections ("NJDOC"); Peter Barnes, Chairman of
Associate Members of NJSPB; Mary Steinberg, NJSPB representative
at EJSP; Mike Powers, Superintendent of EJSP; Donald Mee,
Superintendent of EJSP; Steve Johnson, Assistant Superintendent
of EJSP; Cindy Sweeney, Assistant Superintendent of EJSP; Charles
Davis, Assistant Superintendent of EJSP; Robert LaForgia,
Assistant Superintendent of EJSP; Gregory Paul, Assistant
Superintendent of EJSP; Kulesza Kapchits, M.D., EJSP Infirmary;
Debbie Taylor, Inmate Record Files Custodian at EJSP; the
Honorable Walter Barisonek, A.J.S.C.; the Honorable William
Wertheimer, J.S.C.; Sandra Thaler-Gerber, Civil Case Manager,
Superior Court of New Jersey, Union County; Anne Milgram,
Attorney General for the State of New Jersey; Christopher
Josephson, Assistant N.J. Attorney General; J. McCarthy, Jr.,
Director, Trial Court Services for the Administrative Office of
the Courts ("AOC"); Mary Rubinstein, AOC employee; Arthur Sypek,
Jr., County Counsel for Mercer County; Lillian Nazzaro, Assistant
County Counsel for Mercer County; Andrew Mair, County
Administrator for Mercer County; Brian Hughes, Mercer County
Executive; E. Washington, K. Murray, J. Ferraro, K. Cooper, I.
Santiago, and Mr. Ligon, correctional officers at EJSP; Shelly
Roundtree, Open Records Act liaison at EJSP; Mr. Hardrick, Open
Records Act liaison at EJSP; Ms. Nila, Hearing Officer at EJSP;

3

and Gary Shepperd, NJDOC Disciplinary Charge Appeals Officer.
(Complaint, Caption).  The following factual allegations are
taken from the Complaint, and are accepted for purposes of this
screening only.  The Court has made no findings as to the
veracity of Leverett's allegations.

Leverett submits a 58-page, single-spaced, typewritten
Complaint.  The Complaint (1) names more than 50 defendants, (2)
alleges an assortment of claims that are indecipherable, (3) is
rambling, (4) mixes facts with law, and (5) fails to conform to
the requirement of Federal Rule of Civil Procedure ("Rule")
8(a)(2) that it set forth "a short and plain statement of the
claim showing that the pleader is entitled to relief".

The Complaint seems to take issue with his incarceration
from a conviction and sentence stemming from a July 1980 arrest.
Leverett states that he was convicted in 1981, and has remained
in custody since that time, "through (29)-Years Consecutive of
Defendants' created hells," and that Defendants have been
"attempting to QUIETLY MURDER PLAINTIFF, AS THEIR (DEFENDANTS)
ONLY WAY OUT."  (Compl. at 4).  Leverett also alleges that he has
served 29 consecutive years for a "JURY TRIAL CONVICTION/SENTENCE
THAT NEVER SHOULD HAVE OCCURRED AND ACTUALLY DID NOT OCCUR UNDER
RULES OF LAW AND DUE PROCESS."  (Id. at 7).  Leverett challenged
that conviction in a federal habeas petition, in Leverett v.

Morton, No. 02-2582 (AET), which was dismissed as untimely under

28 U.S.C. § 2244(d).[1]

Leverett next alleges that he was on parole from October 24,

1995 through March 18, 1999, when he was arrested on drug charges

at a shopping mall, and his money and car were seized.  (Compl. at

18.)  He was returned to custody as a parole violator, and has

remained in prison.  Leverett was convicted and sentenced to 20

years in prison, on April 12, 2002, pursuant to the drug and

weapons charges stemming from his March 18, 1999 arrest.  He

claims that these convictions were created by defendants in order

to have him continue to serve a life sentence.  (Id. at 19.)

Leverett also alleges that on January 14, 2008, he attempted

to mail a complaint for filing in state court alleging a claim

under the New Jersey Tort Claims Act.  He alleges that defendant

E. Washington failed to mail the envelope with the complaint.  On

January 25, 2008, the envelope with his tort-claim complaint was

returned to him by defendant J. Ferraro, as if it were incoming

---

[1]  This Court will refer to Leverett's prior habeas petition
to determine the dates of his conviction, which he appears to
challenge in this Complaint.  Leverett was convicted in 1987,
after a retrial from a reversed 1981 conviction.  He was
sentenced to a term of life imprisonment.  The conviction on
retrial was affirmed by the New Jersey Appellate Division on
April 20, 1989, and the New Jersey Supreme Court denied
certification in 1990.  Leverett's petition for post-conviction
relief in state court was denied on May 11, 1990.  He sought
federal habeas relief under 28 U.S.C. § 2254 on May 30, 2002, and
the petition was denied as time-barred in an Opinion and Order
entered by the Honorable Anne E. Thompson on October 25, 2005.
(See Leverett v. Morton, No. 02-2582 (AET), dkt. entry no. 18.)

mail.  Leverett tried to re-send the complaint for filing again
on January 27, 2008, by giving the mail to defendant K. Murray.
Plaintiff admits that he received the return receipt from the
Union County Clerk, defendant S. Thaler-Gerber, indicating that
the complaint was received on February 4, 2008.  Moreover, he
received confirmation from Thaler-Gerber and Judge Barisonek that
the complaint was filed on or about February 14, 2008.  But
Leverett makes unintelligible allegations about how and when the
defendants in his state court action were responding to his
complaint.  Furthermore, Leverett states that the state action
was scheduled for arbitration settlement on February 5, 2008, and
monetary awards were placed on the record on February 14, 2008,
although he did not attend.  He also states that various
defendants filed motions on March 25, 2008, March 27, 2008, and
May 2, 2008, seeking dismissal of the complaint.

He also complains about a video-conference set up at EJSP on
May 9, 2008, without prior notice, as to a Union County Court
House matter.  The matter was allegedly adjourned because of
faulty hearing equipment.  Leverett alleges, however, that the
video-conference was a fraud or sham to cover up the February
2008 arbitration negotiations.

Leverett also alleges that the defendants "were known to be
White Supremeist, White Bigots, and at least on Callous Class-
Discriminating Black" (Compl. at 27), and that they caused his
"toes, feet, and internal system to become contaminated with

Pseudomonas motile bacterium deriving from contaminated drinking and showering water in NJ DOC's old prison Building." (Id. at 28.)  He alleges:

> Plaintiff AVERS his particular Case was built upon the old-fashion Negro Kidnap of a Free Negro Citizen, and take his identity (Free Papers) and name him (plaintiff) something else close to his name, after placing kidnap-victim-Plaintiff in prison under an entirely different name for many years, after staging an actual fraud(s) Indictment #955-80, Jury Trial Conviction, Deliberately Imposing an illegal-improper-Sentence, UPON A CRIME THAT DOES NOT EXIST, EITHER.  It was all a smoke-screen, of plaintiff being punished for having committed a Crime, although, THERE IS NO RECORD OF A SPECIFIC CRIME HAVING BEEN COMMITTED, BY PLAINTIFF, except what optional Crime Changes that lay in actual fraud-created Record-Files of all Defendants hereto. Plaintiff committed no crime to get here.  And there is NO RECORD OF PLAINTIFF HAVING BEEN DULY CONVICTED, although, plaintiff attened [sic] three False Pretense Jury Trials, again, leaving option to defendant-records-Custodians falsely lay claim to what that crime WAS NOT.

(Id.)

Leverett continues to assert that his 1999 arrest was unlawful.  He also alleges that from December 16, 2008 through February 23, 2009, the defendants have been discriminating against him by not having a valid judgment of conviction to hold him in prison, and that he has been injured due to defendants' malicious prosecution, abuse of judicial process, and his false imprisonment.  (Id. at 30.)  He further complains that defendants failed to keep or divulge information as to his 1980 arrest, his 1974 indictment, his 1977 conviction based on a plea agreement and his 1978 release to parole supervision, and that defendants

committed fraud as to his arrest and conviction records.  (<u>Id.</u> at 31-34.)

Leverett asks to be compensated for personal property that was either seized or lost after his arrest in 1999.  (<u>Id.</u> at 35.) He further complains that defendants have been drugging him with "thought-boggling-memory-erasing and mentally challenging drugs under the false pretense of being plaintiff's needed Blood-Pressure-Control Pills, from, June 15, 2002 - through, to, on past - February 23, 2009, which did deliberately injure plaintiff's brain and hinder plaintiff's ability-ies needed to attempt Filing an intelligible Lawsuit against all defendants-State employees."  (<u>Id.</u> at 38.)

Leverett requests the following relief: a judgment declaring that defendants violated his constitutional rights; issuance of a preliminary injunction enjoining defendants from (1) interfering with this lawsuit, (2) hiding records regarding his 1980 arrest and conviction, (3) retaliating against him in any way, and (4) administering the alleged mind-altering drugs; and compensatory and punitive damages in excess of $30 million.

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

In determining the sufficiency of a <u>pro</u> <u>se</u> complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 93-94 (2007) (following <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) and <u>Haines</u>

8

v. Kerner, 404 U.S. 519, 520-21 (1972)).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), refined the standard for summary dismissal of a Complaint that fails to state a claim.  The issue there was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions on Iqbal's treatment during detention, which, if true, violated his constitutional rights.  Id.  The Court examined Rule 8(a)(2).  Citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the

9

Supreme Court identified two principles underlying the failure to
state a claim standard:

> First, the tenet that a court must accept as true all of the
> allegations contained in a complaint is inapplicable to
> legal conclusions.  Threadbare recitals of the elements of a
> cause of action, supported by mere conclusory statements, do
> not suffice ... . Rule 8 ... does not unlock the doors of
> discovery for a plaintiff armed with nothing more than
> conclusions.  Second, only a complaint that states a
> plausible claim for relief survives a motion to dismiss.
> Determining whether a complaint states a plausible claim for
> relief will ... be a context-specific task that requires the
> reviewing court to draw on its judicial experience and
> common sense.  But where the well-pleaded facts do not
> permit the court to infer more than the mere possibility of
> misconduct, the complaint has alleged-but it has not
> "show[n]"-"that the pleader is entitled to relief." <u>Fed.
> Rule Civ. Proc.</u> 8(a)(2).

<u>Iqbal</u>, 129 S.Ct. at 1949-50 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin
> by identifying pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth.
> While legal conclusions can provide the framework of a
> complaint, they must be supported by factual allegations.
> When there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether they
> plausibly give rise to an entitlement to relief.

<u>Id.</u> at 1950.

Thus, to avoid summary dismissal, a civil complaint must
allege "sufficient factual matter" showing that a claim is
facially plausible, thereby allowing a court to draw the
reasonable inference that the defendant is liable for the alleged
misconduct.  <u>Id.</u> at 1948.  A plaintiff must demonstrate that the
allegations of the complaint are plausible.  <u>Id.</u> at 1949-50; <u>see</u>

<u>Twombly</u>, 505 U.S. at 555, & n.3; <u>Fowler v. UPMC Shadyside</u>, 578
F.3d 203, 209-10 (3d Cir. 2009).

    <u>Iqbal</u> provides the "final nail-in-the-coffin" for the "no
set of facts" standard set forth in <u>Conley v. Gibson</u>, 355 U.S.
41, 45-46 (1957), that applied to complaints before <u>Twombly</u>.
<u>Fowler</u>, 578 F.3d at 210.[2]  Now, a district court must conduct the
two-part analysis set forth in <u>Iqbal</u>:

> First, the factual and legal elements of a claim should be
> separated.  The District Court must accept all of the
> complaint's well-pleaded facts as true, but may disregard
> any legal conclusions. [<u>Iqbal</u>, 129 S.Ct. at 1949-50<u>]</u>.
> Second, a District Court must then determine whether the
> facts alleged in the complaint are sufficient to show that
> the plaintiff has a "plausible claim for relief." [<u>Id.</u>]  In
> other words, a complaint must do more than allege the
> plaintiff's entitlement to relief.  A complaint has to
> "show" such an entitlement with its facts.  <u>See</u> <u>Phillips</u>,
> 515 F.3d at 234-35.  As the Supreme Court instructed in
> <u>Iqbal</u>, "[w]here the well-pleaded facts do not permit the
> court to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not 'show [n]'-'that
> the pleader is entitled to relief.'"  <u>Iqbal</u>, [129 S.Ct. at
> 1949-50].  This "plausibility" determination will be "a
> context-specific task that requires the reviewing court to
> draw on its judicial experience and common sense." <u>Id</u>.

<u>Fowler</u>, 578 F.3d at 210-11.

    But the sufficiency of a <u>pro se</u> pleading must be construed
liberally in favor of the plaintiff, even after <u>Iqbal</u>.  <u>See</u>
<u>Erickson v. Pardus</u>, 551 U.S. 89 (2007).

---

    [2]  In <u>Conley</u>, a district court was permitted to summarily
dismiss a complaint for failure to state a claim only if it
appeared beyond doubt that a plaintiff could prove no set of
facts in support of a claim for relief.  <u>Id.</u> at 45-46.  Under
this "no set of facts" standard, a complaint could effectively
survive a motion to dismiss so long as it contained a bare
recitation of the claim's legal elements.

### III.   SECTION 1983 ACTIONS

To state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

### IV.   ANALYSIS

**A.   Judicial Immunity**

Leverett's claims against the numerous judicial defendants, e.g., the Honorable Philip Carchman, P.J.A.D.; the Honorable Richard J. S. Barlow, J.S.C.; the Honorable Paul T. Koenig, J.S.C.; the Honorable David Schroth, J.S.C.; the Honorable Mary Belamouwitz, J.S.C.; the Honorable Charles Delehey, J.S.C.; the Honorable Thomas Kelly, J.S.C.; the Honorable Andrew Smithson, J.S.C.; the Honorable William Mathesius, J.S.C.; the Honorable Walter Barisonek, J.S.C.; and the Honorable William Wertheimer, J.S.C., retired, will be dismissed because these defendants are subject to judicial immunity from suit.

A judicial officer in the performance of judicial duties has absolute immunity from suit.  Mireless v. Waco, 502 U.S. 9, 12 (1991).  This immunity extends to judges of courts of limited jurisdiction, including municipal court judges.  Figueroa v. Blackburn, 39 F.Supp.2d 479, 484 (D.N.J. 1999), aff'd, 208 F.3d

12

435, 441-43 (3d Cir. 2000).  Further, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority."  <u>Stump v. Sparkman</u>, 435 U.S. 349, 356-57 (1978).  Judicial immunity furthers the public interest in judges who are "at liberty to exercise their functions with independence and without fear of consequences."  <u>Pierson v. Ray</u>, 386 U.S. 547, 554 (1967).  It is an immunity from suit, not just from ultimate assessment of damages.  <u>Mireless</u>, 502 U.S. at 11.

The scope of judicial immunity is extensive; it applies "'however injurious in its consequences [the judge's action] may have proved to the plaintiff'."  <u>Gallas v. Supreme Court</u>, 211 F.3d 760, 769 (3d Cir. 2000) (quoting <u>Cleavinger v. Saxner</u>, 474 U.S. 193, 199-200 (1985)).  "Disagreement with the action taken by the judge ... does not justify depriving that judge of his immunity.... The fact that the issue before the judge is a controversial one is all the more reason that he should be able to act without fear of suit."  <u>Stump</u>, 435 U.S. at 363-64.  Also, "the public policy favoring the judicial immunity doctrine outweighs any consideration given to the fact that a judge's errors caused the deprivation of an individual's basic due process rights."  <u>Figueroa</u>, 39 F.Supp.2d at 495.  Thus, allegations that actions were undertaken with an improper motive diminishes neither their character as judicial actions nor the judge's immunity.  <u>See</u> <u>Forrester v. White</u>, 484 U.S. 219, 227 (1988).

13

There are two exceptions to the doctrine of judicial immunity, which are narrow in scope and infrequently applied. The first exception is where a judge engages in nonjudicial acts, i.e., actions not taken in a judge's judicial capacity. Id.; see also Figueroa, 208 F.3d at 440. The second exception involves actions that, though judicial in nature, are taken in the complete absence of all jurisdiction. Mireless, 502 U.S. at 11; Figueroa, 208 F.3d at 440. Neither exception is applicable here.

Leverett fails to assert any allegations against the named judges that would show that they acted outside their judicial capacity. His allegations pertain to the judges presiding over state criminal proceedings, in which Leverett was convicted and sentenced on all occasions asserted. These allegations involve only court-related matters occurring during those state court proceedings. Consequently, Leverett has failed to allege any actionable claim against these judicial defendants. There simply are no allegations to suggest that these judges acted beyond the scope of their judicial authority, or in the complete absence of all jurisdiction. Therefore, all of the named judicial defendants are absolutely immune from liability, and those claims must be dismissed with prejudice as against these defendants.

**B.   Prosecutorial Immunity**

Leverett's claims against the state prosecutors, e.g., Charles Waldron; Alvin McGowen; Paul T. Koenig; Daniel Giaquinto;

14

Skylar Wissman; and Jennifer Downing, all with the Mercer County Prosecutor's Office, must be dismissed because these defendants are absolutely immune from liability.

"[A] state prosecuting attorney who act[s] within the scope of his duties in initiating and pursuing a criminal prosecution" is not amenable to suit under § 1983. Imbler v. Pachtman, 424 U.S. 409, 410 (1976). Thus, a prosecutor's appearance in court as an advocate in support of an application for a search warrant and the presentation of evidence at such a hearing are protected by absolute immunity. Burns v. Reed, 500 U.S. 478, 492 (1991). Similarly, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).

A prosecutor is not entitled to absolute immunity, however, for actions undertaken in some other function. See Kalina v. Fletcher, 522 U.S. 118 (1997) (stating prosecutor testifying as complaining witness rather than state's prosecutorial advocate is protected only by qualified immunity for attesting to truth of facts found in certification in support of arrest warrant); Burns, 500 U.S. at 492-96 (provision of legal advice to police during pretrial investigation is protected only by qualified immunity); Buckley, 509 U.S. at 276-78 (prosecutor not acting as advocate,

15

and not entitled to absolute immunity, when holding press conference or fabricating evidence); see also Yarris v. County of Delaware, 465 F.3d 129 (3d Cir. 2006) (analyzing when prosecuting attorney entitled to absolute immunity for allegedly wrongful acts connected to prosecution; holding, for example, that prosecutor not entitled to absolute immunity for deliberately destroying exculpatory evidence, but entitled to immunity for deciding to deliberately withhold exculpatory evidence before and during trial, but not after adversarial proceedings conclude); Schrob v. Catterson, 948 F.2d 1402, 1409-17 (3d Cir. 1991) (absolute immunity covers prosecutor's actions in (1) creating and filing of in rem complaint; (2) preparing of and applying for seizure warrant; and (3) participating in ex parte hearing for issuance of seizure warrant).

Leverett's allegations against the prosecutor defendants fall within the scope of prosecutorial duties in initiating and pursuing a criminal prosecution.  There are no allegations either that these defendants acted outside the scope of their prosecutorial roles in the criminal proceedings against Leverett, or of wrongdoing or prosecutorial misconduct.  Therefore, the claims against the prosecutor defendants must be dismissed for failure to state a claim and because these defendants are subject to absolute immunity.

16

**C.    Claims As to Leverett's State Court Convictions Are Barred**

Leverett challenges his state court criminal convictions in 1987 and 1999.  He argues that his incarceration is unlawful, as his earlier convictions were purportedly obtained by fraud.  Any claims Leverett may have as to his state court convictions are now time-barred, and will be dismissed accordingly.

Leverett had filed a federal habeas petition under 28 U.S.C. § 2254, challenging his 1987 conviction, and this petition was dismissed as time-barred on October 25, 2005.  See Leverett v. Morton, No. 02-2582 (AET), dkt. entry no. 18.  Thus, any claims relating to that conviction, as may be alleged in this Complaint, are now time-barred.

Moreover, the statute of limitations for a federal habeas action under § 2254 has run as to Leverett's 1999 state court conviction.  It does not appear that Leverett has filed a federal habeas petition as to that conviction, and it also appears that Leverett has not first exhausted his state court remedies before filing any federal habeas petition as required under § 2254(b).

The exclusive federal remedy for an inmate challenging the fact or duration of confinement is a petition for a writ of habeas corpus.  See Preiser v. Rodriquez, 411 U.S. 475 (1973).  "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release

from that imprisonment, his sole federal remedy is a writ of habeas corpus." Id. at 500; see Wolff v. McDonnell, 418 U.S. 539, 554 (1974); Brown v. Fauver, 819 F.2d 395 (3d Cir. 1987).

But as Leverett also seeks pecuniary relief for his incarceration, his claims are barred under Heck v. Humphrey, 512 U.S. 477 (1994), as any claims where a favorable judgment would necessarily imply the invalidity of his underlying criminal conviction and sentence do not accrue until the conviction or sentence has been invalidated. Where success in a plaintiff's § 1983 damages action would implicitly question the validity of confinement, the plaintiff must first achieve a favorable termination of the available state or federal habeas remedies to obtain relief under § 1983. See Muhammad v. Close, 540 U.S. 749, 751 (2004). Because federal habeas petitions may not be granted unless available state court remedies have been exhausted, see 28 U.S.C. § 2254(b)(1)(A), "conditioning the right to bring a § 1983 action on a favorable result in state litigation or federal habeas serve[s] the practical objective of preserving limitations on the availabilities of habeas remedies." Id.

Leverett challenges his convictions and confinement. But he does not indicate that he has exhausted state administrative and court remedies challenging his last conviction, and his earlier conviction in 1987 was not invalidated because his federal habeas petition was dismissed as time-barred. Therefore, these claims are barred under Preiser, as well as Heck, because a favorable

18

outcome as to his claims of denial of due process, actual fraud, or other violations as alleged would necessarily imply the invalidity of his convictions and confinement.  Leverett's sole federal remedy is a writ of habeas corpus, which is now time-barred.  Therefore, his claims that in any way challenge his present confinement are not cognizable under § 1983, and will be dismissed with prejudice.

**D.   Claims Regarding Plaintiff's State Court Action**

Leverett either challenges or attempts to have this Court adjudicate a state court action that he brought in January 2008. But it is unclear whether Leverett's state court action has been concluded by arbitration or is still pending.  Indeed, in one paragraph Leverett alleges that there was an arbitration without his presence, and in another paragraph he complains about how certain defendants are or are not responding to his state court action.  In any event, these claims relating to his state court action must be dismissed for failure to state a claim upon which relief may be granted and lack of subject matter jurisdiction.

To the extent that the state court action was concluded and Leverett is dissatisfied with the outcome, his recourse is to directly appeal in state court.  This Court lacks jurisdiction to hear an appeal of his state court civil judgment, pursuant to the Rooker-Feldman doctrine.[3]  Under the Rooker-Feldman doctrine, a

---

[3]   Rooker v. Fidelity Tr, Co., 263 U.S. 413, 415-16 (1923); D.C. Court of Appeals v. Feldman, 460 U.S. 462, 482, (1983).

district court lacks subject matter jurisdiction if the relief
requested effectively would reverse a state court decision or
void its ruling.  Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d
181, 192 (3d Cir. 2006).  This doctrine applies "to cases brought
by (1) state-court losers (2) complaining of injuries caused by
state court judgments (3) rendered before the district court
proceedings commenced and (4) inviting district court review and
rejection of those judgments."  Id.  Thus, a cause of action
asserted in federal court that ultimately seeks to vacate the
decision or reasoning of a state court is barred.  Desi's Pizza,
Inc. v. City of Wilkes-Barre, 321 F.3d 411, 419-20 (3d Cir. 2001)
(Rooker-Feldman bars claims that are inextricably intertwined
with state adjudication, meaning that federal relief can only be
predicated upon finding that state court was wrong).

     The Rooker-Feldman doctrine applies to bar this proceeding
if (1) Leverett lost his New Jersey state court proceeding; (2)
the state court adjudication occurred before he brought this
federal action; and (3) he is essentially asking this Court to
review and reject the state court adjudication.  Leverett's
action before this Court seeking adjudication of his state court
proceeding is a "prohibited appeal" from the decision of the
state court.  Therefore, this Court does not have subject matter
jurisdiction over Leverett's claims under the Rooker-Feldman
doctrine, and they will be dismissed accordingly.

To the extent that Leverett's state court action is still pending, this Court must abstain from exercising jurisdiction under the Younger abstention doctrine.  See Younger v. Harris, 401 U.S. 37 (1971).  Federal courts should abstain when federal adjudication would disrupt an ongoing state criminal or civil proceeding.  Moore v. Sims, 442 U.S. 415, 423 (1979); Younger, 401 U.S. at 43-54.

Younger abstention "reflects a strong federal policy against federal-court interference with pending state judicial proceedings."  Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982).  Abstention is appropriate where: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims.  Id. at 432.  But the Court should not abstain if the federal plaintiff can show that (1) the state proceedings are being undertaken in bad faith or for purposes of harassment, or (2) some other extraordinary circumstances exist, such as proceedings pursuant to a flagrantly unconstitutional statute, such that deference to the state proceedings will present a significant and immediate potential for irreparable harm to the federal interests asserted.  Schall v. Nix, 885 F.2d 101, 106 (3d Cir. 1988).

The Court will abstain from exercising jurisdiction here under the Younger abstention doctrine, as Leverett's New Jersey

state court action (1) appears to be ongoing, (2) implicates important state interests, and (3) presents an adequate opportunity to raise federal claims therein.  See Middlesex County Ethics Comm., 457 U.S. at 435; Younger, 401 U.S. at 43-54.

Leverett's state court action was brought in January 2008, before he brought this § 1983 action in April 2009.  The state proceedings implicate important state interests, as the dispute centers on matters involving his state court convictions and continued incarceration.  Also, Leverett has the opportunity to present his constitutional claims in the state court action that he himself initiated.  See Pennzoil Co. v. Texaco, 481 U.S. 1, 14 (1987) (finding "burden on this point rests on the federal plaintiff to show that state procedural law barred presentation of its claims").  Accordingly, the Court finds that, even though a federal constitutional matter may be implicated under Section 1983, as alleged by Leverett, abstention is warranted under the Younger doctrine while his state court proceeding raising the same claims may still be pending in state court.

**E.    Interference With Mail and Forced Medication Claims**

Leverett seems to allege that he has been denied the use of mail services from January 10, 2008 through May 14, 2009.  He also alleges that he was given mind-altering drugs under the pretense that it is for control of his blood pressure, from June 15, 2002 through February 23, 2009.

22

Inmates have a limited liberty interest in their mail under the First and Fourteenth Amendments; an inmate's constitutional right to send and receive mail may be restricted for legitimate penological interests.  See Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Turner v. Safley, 482 U.S. 78, 89 (1987).  A single interference with the delivery of an inmate's personal mail, without more, does not rise to the level of a constitutional deprivation.  Morgan v. Montayne, 516 F.2d 1367 (2d Cir. 1975).

But the assertion that legal mail is intentionally opened and read, delayed for an inordinate period of time, or stolen states a First Amendment claim.  See, e.g., Antonelli v. Sheahan, 81 F.3d 1422, 1431-32 (7th Cir. 1996); Castillo v. Cook County Mail Room Dep't, 990 F.2d 304 (7th Cir. 1993).  "[A] pattern and practice of opening properly marked incoming court mail outside an inmate's presence infringes communication protected by the right to free speech.  Such a practice chills protected expression and may inhibit the inmate's ability to speak, protest, and complain openly, directly, and without reservation with the court."  Bieregu v. Reno, 59 F.3d 1445, 1452 (3d Cir. 1995), implied overruling on other grounds recognized in Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).  A policy of opening legal mail outside the presence of the inmate violates the inmate's First Amendment right to freedom of speech, and is not reasonably related to a prison's legitimate penological

interest in protecting health and safety of prisoners and staff. Jones v. Brown, 461 F.3d 353 (3d Cir. 2006).

Leverett does not allege a single incident where his mail was not delivered or received.  He alleges that his state court complaint was not properly mailed or filed, and yet he also acknowledges that his complaint was filed.  Also, Leverett has been able to file papers as demonstrated by the action in this Court.  He also does not articulate a claim that prison officials intentionally delayed his mail.  Therefore, the Court will dismiss this claim.

Leverett's bald, unsubstantiated and fantastical allegations that he is being given mind-altering drugs in lieu of his blood pressure medication, without more, is not sufficient to state a cognizable claim for relief under § 1983.

The claims relating to alleged interference with mail and alleged forced medication of do not provide a short and plain statement of the claims as required by Rule 8(a)(2).  See Untracht v. Fikri, 368 F.Supp.2d 409, 414-15 (W.D. Pa. 2005) (determining needless factual detail and verbose nature of complaint unfairly burdens defendants).  But Leverett, if appropriate, may move to file an amended pleading as to these claims alone, identifying the appropriate defendants and adhering to the requirements set forth in Rule 8 and Iqbal.

**F.    The Complaint Generally Does Not Satisfy Rule 8**

The Complaint is confusing, prolix, and comprised of disjointed random facts that would prevent the numerous defendants from attempting to further investigate each allegation and respond to them in any adequate way.  The Complaint also lacks clarity and alleges facts without putting them in any context so that it is difficult to understand their meaning or importance.  It seems that some of the facts are extraneous and it is unclear how they relate to Leverett's claims.  Further, the alleged facts do not appear in any type of chronological order.

The list of defendants is inexplicable, and it is almost impossible to understand what the defendants did or how they violated Leverett's constitutional rights.  Leverett simply makes bald allegations without any reference to fact.  The Complaint asserts legal conclusions against the defendants in general.

### V.   CONCLUSION

The claims against all judicial defendants and prosecutorial defendants will be dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii), (iii) and 1915A(b)(1) and (2).  The claims challenging Leverett's state court convictions and incarceration will be dismissed as time-barred.  The claims concerning the state court action will be dismissed as barred either by the Rooker-Feldman doctrine, or under the Younger abstention doctrine to the extent that it is still pending.  Any remaining claims will be dismissed under Rule

25

8(a)(2).  To the extent that Leverett may be asserting an interference of mail claim and a forced medication claim, he may move for leave to file an amended pleading that complies with the Rule 8 requirement of a short and plain statement of such claims. The Court will issue an appropriate order and judgment.

                                                               s/Mary L. Cooper

                                               **MARY L. COOPER**
                                               United States District Judge

Dated:  February 18, 2010